**UNITED STATES of America**

**v.**

**Fortune POPE and Anthony Pope, Defendants.**

United States District Court
S. D. New York.

Oct. 27, 1960.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, Robert B. Fiske, Jr., Peter H. Morrison, New York City, of counsel, for United States.

Cahill, Gordon, Reindel & Ohl, New York City, John T. Cahill, Thomas C. Mason, Immanuel Kohn, New York City, of counsel, for defendants.

WEINFELD, District Judge.

These are motions by the defendants to dismiss a twelve-count indictment or, in the alternative, to strike portions thereof. Eleven counts charge substantive violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, relating generally to misstatements or omissions of material facts in registration and proxy statements filed under the Acts and in proxy solicitations. One count charges a conspiracy to defeat the lawful functions of the Securities and Exchange Commission and to commit violations of the Acts.

All counts of the indictment are challenged on the ground that they are vague and insufficient as a matter of law. Con-

stitutional infirmities are also advanced against the section of the 1934 Act and the regulations upon which the counts are based. In addition to this broadside attack, individual counts are challenged upon specifically enumerated grounds including, in the instance of Count II, lack of proper venue.

### The Motions To Dismiss For Vagueness And Insufficiency

#### (a) Count II

The principal thrust of the defendants' motion based upon vagueness is directed against Count II, the first substantive count, which charges a violation of section 24 of the Securities Act of 1933.[1] The provision imposes criminal penalties upon:

"any person who willfully, in a registration statement filed under this subchapter, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading * * *."

Count II centers about a registration statement filed with the Securities and Exchange Commission by the defendants, as officers and directors of Colonial Sand & Stone Co., wherein they described certain transactions between Colonial and other corporations in which they owned majority interests, as follows:

"Interest Of Management And Others In Certain Transactions

"Messrs. Anthony Pope and Fortune Pope own majority interests in each of the following enterprises: Empire Sand & Stone Corp., * * * [and other named corporations]. In addition to dealings with their other customers and suppliers, each of these enterprises carries on business with * * * [Colonial], selling to * * * [Colonial] in the ordinary course of business various items and services needed in the operation of the business of * * * [Colonial], or purchasing from * * * [Colonial] in the ordinary course of business various items which * * [Colonial] regularly sells to the trade. In these transactions, each of these enterprises deals with * * * [Colonial] on terms at least as advantageous to * * * [Colonial] as those which would be available to it on the open market. * *"

Count II then charges that in the foregoing registration statement the defendants, willfully and knowingly, (1) made untrue statements of material facts, (2) omitted to state material facts required to be stated therein, and (3) omitted material facts necessary to make the statements therein not misleading. It alleges that the misstatements or omissions concerned facts relating to material interests, direct and indirect, of the defendants and their associates,[2] in material transactions to which Colonial and its subsidiaries were and were to be parties;[3] that such transactions related to the sale, transportation and delivery of rock salt and solar salt. Count II further charges that in these transactions the associates of the defendants did not deal with Colonial on terms at least as advantageous to Colonial as those which would have been available to it in the open market, but that such associates were used by the defendants as devices to conceal the diversion of business, moneys and profits from Colonial for the benefit and enrichment of the associates and ultimately the defendants.

■ It may be acknowledged that the indictment is not a model pleading. But

---

1. 15 U.S.C.A. § 77x.

2. "Associate," as used in the Regulations, "means (1) any corporation * * * of which such person is an officer * * * or is, directly or indirectly, the beneficial owner of 10 percent or more of any class of equity securities * * *." 17 C.F.R. § 230.405(b–1) (Supp.1960).

3. Such information is required to be set forth in the Registration Statement. Form S–1, Item 20, 1 CCH 1960 Fed. Sec.L.Rep. par. 7123.

the test of its sufficiency is not whether it could have been more artfully drawn, or made more definite and certain.[4] The true test is whether the indictment sufficiently apprises the defendants of the crimes charged against them so as to enable them to prepare their defense and to plead any judgment entered thereunder as a bar to further prosecution for the same offense.[5]

So tested, the count here in question meets the basic requirements.[6] The allegations substantially follow the language of section 24 of the Act, 15 U.S.C.A. § 77x, which contains the essential elements of the crime charged.[7] In particularizing the generic terms of the statute, the count then specifies (1) the date and place of the filing of the registration statement, (2) the precise paragraph of the registration statement wherein it is alleged the defendants misstated, and omitted to state, material facts, and (3) that such misstatements and omissions concerned material interests of the defendants and their associates in certain transactions relating to the sale, transportation and delivery of salt. Colonial and associates of the defendants are named as parties to the transactions. Finally, falsity is delineated in that, contrary to the defendants' statements in the registration form, the associates of the defendants in such transactions did not, in fact, deal with Colonial on terms at least as advantageous as was available to it in the open market. This analysis of the allegations of the count makes it clear that not only are the essential elements of the crime charged set forth, but that sufficient detail is given to enable the defendants to defend against the charges.

The defendants' complaint that the indictment fails to specify "the nature, amount, place, dates, or any other identification of the 'transactions' allegedly not reported" or "the description of property allegedly diverted," can readily be resolved by a bill of particulars to which they may be entitled under the Federal Rules of Criminal Procedure.[8]

The defendants next urge that Count II is defective in other respects. One phase revolves essentially about the charge that the defendants "did omit to state material facts required to be stated therein." It is acknowledged that this portion of the accusation is bottomed upon the requirement of Item 20 of Reg-

4. United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92; Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Varlack, 2 Cir., 1955, 225 F.2d 665, 670.

5. United States v. Cruikshank, 1875, 92 U.S. 542, 557–559, 23 L.Ed. 588. See United States v. Debrow, supra note 4; United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; United States v. Miller, 2 Cir., 246 F.2d 486, 488–489, certiorari denied 1957, 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261.

6. Cf. United States v. Bitz, 2 Cir., 1960, 282 F.2d 46.

7. Where a violation of a statute is charged, an indictment in the language of the statute is ordinarily sufficient, an exception being where the statute includes by implication an essential element of the offense. See United States v. Carll, 1881, 105 U.S. 611, 26 L.Ed. 1135; United States v. Palmiotti, 2 Cir., 1958, 254 F. 2d 491; United States v. Williams, 5 Cir., 203 F.2d 572, certiorari denied 1953, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 347; United States v. Achtner, 2 Cir., 1944, 144 F.2d 49. However, where the statute is couched in general terms, the indictment must particularize the offense sufficiently to inform the defendant of the accusation which he must meet. United States v. Hess, 1888, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516; United States v. Simmons, 1877, 96 U.S. 360, 24 L.Ed. 819.

8. See United States v. Debrow, 1953, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92; Singer v. United States, 3 Cir., 1932, 58 F.2d 74 (per curiam); Wilson v. United States, 2 Cir., 275 F. 307, certiorari denied 1921, 257 U.S. 649, 42 S. Ct. 57, 66 L.Ed. 416; United States v. Peelle, D.C.E.D.N.Y.1954, 122 F.Supp. 923. Cf. United States v. Shindler, D.C. S.D.N.Y.1952, 13 F.R.D. 292.

istration Form S-1 [9] that the registrant state:

"the approximate amount of any material interest, direct or indirect, of any of the following persons in any material transactions * * * to which the registrant or any of its subsidiaries was, or is to be, a party:

"(a) Any director or officer of the registrant;

\* \* \* \* \* \*

"(c) Any associate of any of the foregoing persons."

■ Defendants' argument here, as the Court understands it, is that a diversion of business, moneys or profits from Colonial cannot be considered a transaction to which Colonial "was, or is to be, a party." However, the substance of the allegation is that the diversion arose from, and was effected through, material transactions to which Colonial was a party. Whether the proof upon a trial will support the charge, as further amplified in the count, is not the issue here. For the purposes of this motion the allegations of the count must be accepted as true.[10]

■ So, too, with respect to the contention that Count II is fatally defective because the facts alleged to be material are not identified. This disregards the specific allegations which charge that the misstatements and omissions related to material interests of the defendants and their "associates" in material transactions with Colonial, involving rock salt and solar salt.[11] This averment of materiality is sufficient;[12] it is not required that the indictment recite all the circumstances which render a fact material.[13]

■ In its further attack upon that portion of Count II which alleges an omission of material facts "required to be stated," defendants urge that Item 20 of Form S-1 specifies that no information need be given as to any transaction or interest therein, where:

"(iv) the interest of the specified persons, including all periodic installments in the case of any lease or other agreement providing for periodic payments or installments does not exceed $30,000."

Relying upon this provision, the defendants ask dismissal of the count upon the ground that there is no allegation that the transactions exceeded the amount of $30,000 and so came within the embrace of the rule. The contention is without merit. The rule is that an indictment need not negative a statutory exception [14] unless the exception is so inseparable from a true definition of the offense that the ingredients of the offense cannot accurately be described if the exception is omitted.[15]

■ Item 20 fully defines the duty of the registrant. The exception is distinct and in no sense forms an integral part of the offense. It does not change the general duty imposed, but merely exempts a limited class of transactions which fall within its terms. Therefore,

9. 1 CCH 1960 Fed.Sec.L.Rep. par. 7123.

10. Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 343, 72 S.Ct. 329, 96 L.Ed. 367; Universal Milk Bottle Service v. United States, 6 Cir., 1951, 188 F.2d 959, 962–963 (per curiam).

11. The matter of materiality may ultimately resolve itself into a question of law or one of fact, or a mixed question of law and fact. Cf. United States v. Shindler, D.C.S.D.N.Y.1959, 173 F.Supp. 393, 395; United States v. Stark, D.C.D.Md.1955, 131 F.Supp. 190, 208.

12. See Edwards v. United States, 1941, 312 U.S. 473, 483, 61 S.Ct. 669, 85 L.Ed. 957.

13. Cf. Hendricks v. United States, 1912, 223 U.S. 178, 184, 32 S.Ct. 313, 56 L.Ed. 394; Markham v. United States, 1895, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441.

14. Edwards v. United States, 1941, 312 U.S. 473, 483, 61 S.Ct. 669, 85 L.Ed. 957; McKelvey v. United States, 1922, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; United States v. Cook, 1872, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538; Bistram v. United States, 8 Cir., 1956, 237 F.2d 243.

15. United States v. Bailey, 7 Cir., 1960, 277 F.2d 560; Sutton v. United States, 5 Cir., 1946, 157 F.2d 661.

it need not be negatived.[16] Whether or not the transactions come within the exception must await trial.

### (b) Counts III through XII

█ Counts III through XII are also attacked for vagueness and the immateriality of misstatements or omissions therein on the same general grounds advanced against Count II.

The charges in these counts revolve about a paragraph in substantially identical form contained in a proxy statement filed with the Commission each year, from 1956 through 1960, and used in annual proxy solicitations from security holders. Indeed, the relevant paragraph in each proxy statement is essentially similar to the one contained in the registration statement, which is the subject of Count II.

The gist of the accusation is that each of these proxy statements contained misstatements and omissions of material facts. Each filing [17] and each solicitation [18] in each of the years is made the subject of a separate count.

Each count contains the essential elements of the offenses charged. The factual content of each closely parallels that in Count II. The materiality of the information falsified or omitted is charged. Particulars are set forth sufficiently to identify the false statements, the nature of the transactions, the parties thereto and the respects in which it is asserted material facts were misstated and omitted. The Court's reasoning in rejecting defendants' arguments directed toward Count II applies with equal force to the same contentions made with respect to Counts III through XII and compels the same conclusion.

### (c) The Conspiracy Count

█ The defendants' challenge to the conspiracy count is without substance. It goes beyond the minimal requirements of pleading a conspiracy charge.[19] It clearly charges the essential elements of the crime of conspiracy. The defendants and others are named as the alleged co-conspirators. The nature of their illegal agreement is specified. The stated objective of the conspiracy is described as one to defraud the United States by impeding, impairing, obstructing and defeating lawful functions of the Securities and Exchange Commission in its protection of public investors; also to make false and misleading statements with respect to material facts and to omit to state material facts required to be stated and necessary to make statements not false and misleading in registration statements, proxy statements and annual reports on Form 10–K, and in proxy solicitations from security holders. With respect to the latter part of the conspiracy, it is specifically charged that the misstatements and omissions, involving transactions relating to rock salt and solar salt, would be made willfully and knowingly to conceal the diversion of business, moneys and profits from Colonial, the registrant, of which the defendants were officers. Overt acts in further-

16. In any event, the Government contends that under Count II there are two additional allegations of violation of section 24 of the Securities Act of 1933 which are not bottomed on Item 20.

17. The odd-numbered counts, beginning with Count III, charge a violation of section 32(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78ff(a).

18. The even-numbered counts, beginning with Count IV, charge a violation of Rule 14a–9 of the SEC, 17 C.F.R. § 240.14a–9 (Supp.1960).

19. It is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, or to state such object with the detail which would be required in an indictment for committing the substantive offense. Wong Tai v. United States, 1927, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545. See Thornton v. United States, 1926, 271 U.S. 414, 423, 46 S.Ct. 585, 70 L.Ed. 1013; Williamson v. United States, 1908, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278. See also Pettibone v. United States, 1893, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; United States v. Gilboy, D.C.M.D.Pa. 1958, 160 F.Supp. 442, 452.

ance of the conspiracy and to effect its objects are specified.

The Court concludes that the conspiracy count, as well as the substantive counts, are sufficient in law.

### The Motion To Dismiss All Counts For Unconstitutionality

Defendants alternatively contend that if the counts be construed as charging a crime within any regulatory provision, that such provision should be held unconstitutional because it sets up no ascertainable standard of guilt. Here the defendants invoke the familar "void for vagueness doctrine."[20]

### (a) The Attack on the Regulations Upon Which, in Part, Count II is Based

With respect to Count II, the prime attack is directed against Item 20 of Form S–1, the pertinent portions of which have already been quoted.[21] The defendants argue that "transaction" is nowhere defined, thus leaving it to the individual to decide whether or not a matter is a "transaction"; then, having concluded that it is a "transaction," he must determine whether the registrant is a "party" thereto, since the word is not defined; and further that he is thrown upon his own to decide whether any person as to whom the information

is required has an "interest" in the transaction. They make a similar contention with respect to the word "material" as used in the eighth and final instruction of Item 20, which provides:

"This item does not require the disclosure of any interest in any transaction unless such interest and transaction are material."

Here the defendants say that no criteria are stated to guide the registrant as to what is or is not "material" and, in consequence, all of Item 20 is fatally defective because one is left to speculate as to whether or not any interest in a transaction is "material" and hence required to be disclosed.[22]

The defendants' attempt to find constitutional infirmity in the regulation by considering the words "transaction," "party," "interest" and "material" in vacuo and truncated from the sentences in which they appear in the regulation is unpersuasive. Each of these words, in the context in which it is used, can hardly be called nebulous or abstract in meaning. They are simple words of ordinary usage and readily understood.[23]

"Material," as an element of criminal offenses, is used in a variety of statutes touching upon perjury,[24] and false statements to Government officials and in official documents,[25] to mention but a few.

---

**20.** Cf. M. Kraus & Bros. v. United States, 1946, 327 U.S. 614, 621–622, 66 S.Ct. 705, 90 L.Ed. 894.

**21.** The defendants do not raise any issue of constitutionality based upon vagueness of section 24 of the Securities Act of 1933, 15 U.S.C.A. § 77x. They confine their challenge to Item 20 of Form S–1.

**22.** The Government contends that by analogy the substance of the instructions in Item 20 was upheld against constitutional attack for alleged vagueness in United States v. Guterma, 2 Cir., 281 F.2d 742, 746, certiorari denied 1960, 81 S.Ct. 114. However, the holding there was only to the effect that "there is nothing vague or indefinite in the requirement for filing an annual report * * *."

**23.** "[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the

practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367.

**24.** 18 U.S.C.A. § 1621.

**25.** 18 U.S.C.A. § 1001 (falsification of matters within jurisdiction of governmental agencies); 18 U.S.C.A. § 1546 (false statements in immigration documents); 38 U.S.C. § 2005 (false statements to obtain unemployment benefits); 42 U.S.C.A. § 1368 (false statements to obtain Social Security benefits).

In none of these has it been found that the word "material" required spelling out in order to guide one as to what conduct is permitted or prohibited.

█ All that is required is that the language employed in a statute or regulation convey a reasonable degree of certainty adequate to inform one as to what is or is not required. The test to be applied is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.[26] As stated by Mr. Chief Justice Hughes:

> "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding."[27]

"Transaction," "party," "interest" and "material," viewed in their proper setting, are sufficiently explicit and set forth a standard that is reasonably certain; a well-intentioned individual should have no difficulty in understanding their meaning.[28] To require an administrative agency to define words of ordinary meaning and common usage in a regulation promulgated to enforce Congressional policy would require a glossary and, in most instances, hobble the legislative purpose.

**(b) The Challenge to the Statute and Regulations Upon Which Counts III through XII are Based.**

The same "void for vagueness" attack is leveled against section 32(a) of the Securities Exchange Act of 1934,[29] the provision upon which the charges in the odd-numbered counts, relating to the filing of proxy statements, and Rule 14a–9,[30] upon which the even-numbered counts, relating to the solicitation of proxies by false and misleading statements, are bottomed. Section 32(a) is a catch all provision which, among other matters, imposes criminal sanctions upon persons who make false statements of material facts in documents required to be filed under the Act or who violate any Commission rule or regulation, the violation of which is made unlawful under the Act.

█ Initially, defendants advance a construction of section 32(a) which, if adopted, would avoid the constitutional question by holding it wholly inapplicable to proxy statements. They postulate their position first upon the circumstance that "material fact" is not defined in the Securities Exchange Act of 1934. Consequently, they contend that such leg-

26. Cf. Jordan v. De George, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886.

27. Sproles v. Binford, 1932, 286 U.S. 374, 393, 52 S.Ct. 581, 587, 76 L.Ed. 1167.

28. See Coplin v. United States, 9 Cir., 88 F.2d 652, 657, certiorari denied 1937, 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357.

29. Section 32(a) makes it an offense when "any person * * * willfully * * * makes, or causes to be made, any statement in any * * * document required to be filed under this chapter or any rule or regulation thereunder * *, which statement was false or misleading with respect to any material fact. * * *" 15 U.S.C.A. § 78ff(a).

30. Rule 14a–9 provides, "No solicitation * * * shall be made by means of any proxy statement, * * * containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading * * *." 17 C.F.R. § 240.14a–9 (Supp. 1960). The constitutionality of the Rule was upheld in United States v. Guterma, D.C.S.D.N.Y.1960, 189 F.Supp. 265.

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78n(a), makes it unlawful to solicit proxies in contravention of such rules and regulations as the Securities and Exchange Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. Section 32(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78ff(a), imposes criminal sanctions for willful violation of regulations promulgated under the Act, the violation of which is made unlawful or the observance of which is required under the Act.

islative history as is available shows that Congress, in using "material fact" in section 32(a), limited its application to a fact which might influence an investor either to buy or not to buy securities— that it never intended that it apply to a fact which may influence his vote or induce him to execute a proxy. Proceeding from this premise, they reach the conclusion which to them "seems inescapable that Congress did not have in mind proxy statements in making it a crime to make statements in documents, required to be filed, which are false or misleading with respect to any material fact." There is not a single word in the legislative history to support their conclusion. On the contrary, it is negated by the express condemnation by the Congress of the unlawful solicitation of proxies.[31] The restricted construction of section 32(a) advanced by the defendants disregards the broad objective of the 1934 Act, which encompassed additional protection to the investing public complementary to the protection embodied in the 1933 Act.[32] This rationale was not limited, as the defendants urge, simply to the purchase and sale of securities; it extended protection against mismanagement or maladministration of the investment already made. Congress also intended that investors would fully and fairly receive all pertinent information in connection with the exercise of their voting power to select those they deem worthy of their trust in the management of their investment.[33] The statutory method is again one of disclosure with the basic requirement that stockholders whose proxies are sought be given all material facts. Section 14(a) of the Securities Exchange Act of 1934,[34] which makes it unlawful to solicit proxies in contravention of such rules and regulations as the Commission may prescribe "as necessary or appropri-ate in the public interest or for the protection of investors," seeks to insure the integrity of corporate elections. Rule 14a–9 implements this Congressional purpose by its prohibition against false or misleading statements in proxies in the course of the struggle for corporate control.[35]

It would indeed be strange remedial legislation for Congress to have made it unlawful under section 14(a) "to solicit any proxy * * * in contravention of * * * rules and regulations" and, at the same time, to have insulated violators from punishment by excluding them from section 32(a), the general penalty provision.

■ The conclusion that is compelled is contrary to that which the defendants find "inescapable." Section 32 (a) is applicable to proxy statements. To hold otherwise would defeat the Congressional mandate.

Consequently, we reach the defendants' constitutional challenge based upon their contention that the words "material fact" in the context of the section and in Rule 14a–9 do not establish an ascertainable standard of guilt.

In Coplin v. United States, 9 Cir., 88 F.2d 652, 657, certiorari denied 1937, 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357, the Court of Appeals held that "material fact" was sufficiently definite in the context of section 17(a) (2) of the Securities Act of 1933[36] to meet constitutional standards. Defendants seek to distinguish it, however, on the ground that "material fact," as used in section 17(a) (2) was more specific in that it related to a fact omitted or stated falsely "to obtain money or property," whereas, in respect to both section 32(a) and Rule 14a–9, "material fact" is not delimited, no indication being given of the person or-

31. 15 U.S.C.A. § 78n.

32. H.R.Rep. No. 1383, 73d Cong., 2d Sess. 1–2 (1934). See 15 U.S.C.A. § 78b.

33. See S. E. C. v. Transamerica Corp., **3** Cir., 1947, 163 F.2d 511, 518, certiorari denied 1948, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 418.

34. 15 U.S.C.A. § 78n(a).

35. See S. E. C. v. May, 2 Cir., 1956, 229 F.2d 123, 55 A.L.R.2d 1123; H.R.Rep. No. 1383, 73d Cong., 2d Sess. 13–14 (1934); S.Rep. No. 792, 73d Cong., 2d. Sess. 12 (1934).

36. 15 U.S.C.A. § 77q(a) (2).

class of persons to whom the facts must be material, nor the required or potential effect before a fact may be classed as "material."

Section 17(a) (2) of the 1934 Act, upheld in the Coplin case, pertained to statements made to obtain money or property. The regulation here under attack pertains to statements made to obtain proxies. One seeks to protect a purchaser of stock; the other seeks to protect the holder of stock in his franchise rights. Except for the difference in purpose, the prohibitory clause in each is substantially the same. The protection of one's investment once acquired is no less important than protection against acquiring an ill-advised investment. Certainly "material fact" used in Rule 14a–9 to protect one's vote is no less vague than when used in the identical context in section 17(a) (2) to protect one's property or money. Just why a reasonable man should have difficulty in understanding the words in one instance and not in the other is not made clear. In either instance materiality is a matter to be determined upon all the facts and circumstances of a particular case.[37]

Taken in the context in which "material fact" is used, both in section 78ff(a) and Rule 14a–9, it is sufficiently definite so as to contain that "reasonable degree of certainty"[38] necessary to meet constitutional requirements.

### The Motion To Dismiss For Lack Of Venue

With respect to Count II, the defendants raise a substantial issue of lack of venue. The count alleges that the registration statement was filed with the Securities and Exchange Commission in the Southern District of New York. The defendants point out (1) that the statute provides that the filing of a registration statement is deemed to have taken place upon its receipt by the Commission,[39] and (2) that under the Commission's rules and regulations the place designated for filing is its principal office located in Washington, D. C.[40] Accordingly, they contend that the offense charged could have occurred only upon the filing of the registration statement in the District of Columbia, and hence venue does not lie within this district.

To the Government's contention that the allegation that the filing occurred in this district controls on this motion, defendants ask that the Court take judicial notice of the statutory and regulatory provisions and conclude that any attempted filing in New York "could not have been effective and no offense, as alleged in Count II, could have occurred." However, assuming arguendo, as the defendants contend, that the filing of the registration statement was not effective until it was received in the proper office in Washington, D. C., this does not necessarily preclude trial of the offenses in this district. The essential elements of the crime charged consist not only of the filing of the statement,[41] but, equally important, the ingredient of falsity. Proof upon the trial may establish, as the Government contends, that the defendants performed, with respect to the latter element, sufficient acts within this district to bring the matter within the ambit of 18 U.S.C., section 3237,[42] which permits

---

37. Cf. Coplin v. United States, 9 Cir., 88 F.2d 652, 657, certiorari denied 1937, 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357.

38. Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367. Cf. Sproles v. Binford, 1932, 286 U.S. 374, 393, 52 S.Ct. 581, 76 L.Ed. 1167.

39. 15 U.S.C.A. § 77f(c).

40. 17 C.F.R. § 230.110 (1949); 17 C.F.R. § 230.455 (Supp.1960).

41. See United States v. Lombardo, 1916, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, where failure to file was the sole ingredient of the offense.

42. Cf. Travis v. United States, 10 Cir., 1957, 247 F.2d 130, certiorari granted 1960, 363 U.S. 801, 80 S.Ct. 1235, 4 L.Ed.2d 1146; Miller v. United States, 2 Cir., 246 F.2d 486 certiorari denied 1957, 355 U.S. 905, 78 S.Ct. 332, 2 L. Ed.2d 261; De Rosier v. United States, 5 Cir., 218 F.2d 420, certiorari denied 1955, 349 U.S. 921, 75 S.Ct. 660, 99 L.

**24**

prosecution of an offense in any district in which it is begun, or it may establish that acts of aiding and abetting occurred in this district within the scope of the rule in the Gillette case.[43] In the latter case our Court of Appeals held that an aider and abettor could be tried in the district where he performed accessorial acts, although the substantive offense was committed in another district.[44]

The Motion To Dismiss The Even-Numbered Counts Beginning With Count IV On The Ground That Each Charges The Same Offense As That Alleged In The Preceding Odd-Numbered Count.

The defendants contend that each even-numbered count, beginning with Count IV, charges the same offense as the preceding odd-numbered count, and in reality is a fragmentation of a single charge into two. They therefore seek dismissal of all such even-numbered counts, or, in the alternative, that the Government elect upon which counts it plans to prosecute.

■ The law is well established that: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[45]

■ In all, five proxy statements from 1956 to 1960, inclusive, are at issue. The defendants emphasize that the exact passage in a given year's statement is the basis of each pair of counts. While this is true, the gravamen of each charge is different. Thus, the odd-numbered counts charge that the defendants made false and misleading statements in a document required to be filed under the Act, whereas the even-numbered counts charge that by the use of the mails, instrumentalities of commerce and the American Stock Exchange they solicited proxies in violation of Commission rules which, in general, prohibit such solicitation by means of false and misleading statements.

The circumstance that under the odd and even-numbered counts there is an essential element common to each, to wit, the alleged false and misleading paragraph in the proxy statement, does not make each charge identical. Each accusation is predicated upon a separate prohibition in section 32(a) of the 1934 Act. A conviction could not be had under the even-numbered counts by proof of the essential elements necessary to sustain the odd-numbered counts, and vice versa.

Accordingly, this branch of the defendants' motion is denied and there is no basis upon which to require the Government to make an election.

The Motion To Strike Portions Of Various Counts As Surplusage

The defendants move to strike portions of the counts on the ground that they are surplusage and prejudicial.

■ This motion concerns an allegation in each count which, with reference

Ed. 1253. See also United States v. Cashin, 2 Cir., 1960, 281 F.2d 669, where the Court of Appeals gave rather broad scope to the venue provision with reference to violations under the Securities Act of 1933.

43. United States v. Gillette, 2 Cir., 189 F. 2d 449, certiorari denied 1951, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625.

44. The failure of the indictment to specify the aiding and abetting section (18 U.S. C. § 2) does not preclude proof thereunder upon the trial. Jim Fuey Moy v. United States, 1920, 254 U.S. 189, 41 S. Ct. 98, 65 L.Ed. 214; Greenberg v.

United States, 8 Cir., 1924, 297 F. 45; Wood v. United States, 4 Cir., 1913, 204 F. 55, 58, appeal dismissed 1914, 232 U.S. 731, 34 S.Ct. 480, 58 L.Ed. 818; United States v. Carolene Products Co., D.C. N.D.W.Va.1943, 51 F.Supp. 675, affirmed 4 Cir., 140 F.2d 61, affirmed 1944, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15.

45. Blockburger v. United States, 1932, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306. See Gore v. United States, 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405; Gavieres v. United States, 1911, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489.

to the salt transactions, states in substance that the various corporations in which the defendants owned majority interests were used by the defendants as devices to conceal the diversion of business, moneys and profits from Colonial and its stockholders to the ultimate benefit of the defendants. The defendants argue that such diversion is not a Federal crime and cannot form part of the alleged conspiracy or the substantive offenses; further, that the references add nothing to the charges, but serve only to prejudice the case against them. This branch of the motion may be disposed of summarily, since our Court of Appeals, in its recent decision in United States v. Guterma,[46] upheld a substantially similar allegation. There the defendants made a motion to strike the paragraph, and its denial was urged as a major ground of error upon appeal following the defendants' conviction. The Court held:

"The motion to strike was correctly denied. The government had charged a conspiracy not to file required reports and to defraud the government of the lawful functioning of the SEC for the protection of investors by such failure and by the filing of false and misleading reports, see Hammerschmidt v. United States, 265 U.S. 182 [44 S.Ct. 511, 68 L.Ed. 968] (1924); it was relevant for the government to show that the conspiracy was motivated by a scheme to appropriate assets of Jacobs for defendants' benefit and

to demonstrate what the facts were that defendants allegedly wished to conceal from the SEC and the public."

This Court finds no appreciable difference between the allegation considered in the Guterma case and that contained in the pending indictment. Whatever one's view,[47] were the matter res integra, consideration is foreclosed by the determination of the Court of Appeals.

■ Finally, the defendants move to strike out as surplusage the words "among other things," as they appear in each of the Counts III through XII. They are contained in the charging paragraph of each count, which alleges that the defendants made false and misleading statements with respect to material facts "in that, among other things, * * *." The phrase is followed by a specification of the respect in which it is charged the statements are false and misleading.[48] The defendants contend that to permit "among other things" to remain in the various counts is to their prejudice; that it will permit the prosecution to go beyond the specific charge of falsity made by the grand jury. The Court is of the view that the point is well taken and that the matter should be stricken.

The grand jury has delineated the alleged false and misleading matter contained in the proxy statements upon which it based the accusations against the defendants. The words "among other things" add nothing to the charges

---

46. 2 Cir., 281 F.2d 742, 746, 1960, certiorari denied 81 S.Ct. 114.

47. Cf. Bratton v. United States, 10 Cir., 1934, 73 F.2d 795 (dictum).

48. Thus, Count III charges: "The aforesaid statement as the defendants then and there well knew, was false and misleading with respect to material facts in that, *among other things*, Colonial * * * had material dealings and transactions with 'enterprises' controlled and owned by the defendants, including * * * [named corporations] relating to the transportation and delivery of rock salt

in which dealings and transactions these 'enterprises' did not deal with Colonial * * * on terms at least as advantageous to Colonial * * * as would have been available to it on the open market, but in truth and in fact these 'enterprises' were used by the defendants as corporate devices, conduits and intermediaries to divert, and conceal the diversion of, business, monies and profits from Colonial * * * and its stockholders, for the benefit and enrichment of the said 'enterprises' and, ultimately, the said defendants." (Emphasis supplied.)

and give the defendants no further information with respect to them.[49]

■ But the vice goes beyond mere failure to inform. The grand jury, under the Constitution, is the accusatory body in felony offenses.[50] To permit the allegation to remain would constitute an impermissible delegation of authority to the prosecution to enlarge the charges contained in the indictment.[51]

A specific charge made by the grand jury may itself fail for lack of proof and yet, if the prosecution may augment the charges under the all-inclusive "among other things," the defendants may finally be prosecuted and convicted on charges of falsity in the statements not considered by the grand jury or, if considered, may have been rejected by it.

■ It is no answer to the defend-ants' claim of prejudice, as was suggested upon the argument of the motion, that they could restrict the charges by a motion for a bill of particulars. A bill of particulars would permit the prosecution

to go beyond the grand jury accusation, as set forth in the indictment, by adding thereto specifications of false and misleading statements under the phrase "among other things." This would enable the prosecution to "guess at what was in the grand jury's mind * * *."[52]

The language in question is not only surplusage, but may, if not stricken, result in depriving a defendant of his constitutional right to be accused of a felony offense only on the basis of a grand jury indictment. The matter is ordered stricken.[53]

It need hardly be added that this disposition does not foreclose the receipt in evidence of any matter which may be relevant to the issues under the indict-ment.

The Court has considered all other contentions made by the defendants and finds them without merit.

Defendants' motions are granted only to the extent of striking "among other things" appearing in the various counts of the indictment; in all other respects they are denied.

---

49. The Government relies upon United States v. Klos, No. C–8579, E.D.Wash., January 19, 1960, an unreported case, wherein an order was entered denying a motion to strike the words "among others" from an indictment. The ruling was peremptory and the issue neither considered nor discussed. This Court, with due respect, does not consider that disposition authoritative.

Independent research by the Court has uncovered but one case which is closely analogous to the instant one, People v. Farson, 1927, 244 N.Y. 413, 155 N.E. 724, 725. There the indictment charged the defendants with manipulation of securities "by means of pretended purchases and sales of such stock and by divers other fictitious transactions and devices, * * * to the grand jury * * * unknown * * *." The New York Court of Appeals, on demurrer, struck out the clause beginning with "and by divers other [etc.]" as "clearly too

uncertain in failing to state what such fictitious transactions and devices were." Id., 244 N.Y. at page 416, 155 N.E. at page 725.

50. See U.S.Const. amend. V, which refers to "infamous crimes." There are offenses other than felonies which may require prosecution by indictment. United States v. Moreland, 1922, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700; Ex parte Wilson, 1885, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89.

51. Cf. Ex parte Bain, 1887, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.

52. United States v. Lattimore, 1954, 94 U.S.App.D.C. 268, 215 F.2d 847, 850.

53. This, of course, does not affect the validity of the remaining portions of the indictment. Cf. Ford v. United States, 1927, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793.